UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JANIE LYNN KAUFMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-525-DCP |
| | ) | |
| ANDREW M. SAUL, [1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court is

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 20]. Janie

L. Kaufmann ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge

("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the

reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's

motion.

## I.     PROCEDURAL HISTORY

On January 20, 2015, Plaintiff protectively filed an application for disability insurance

benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began on March 1, 2014. [Tr. 24, 139–40]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 162–63]. A hearing was held on July 26, 2016. [Tr. 39–72]. On October 26, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 24–33]. The Appeals Council denied Plaintiff's request for review on October 10, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on December 6, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since March 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following medically determinable impairments: depressive disorder, somatoform disorder, hypertension, obesity, and fibromyalgia (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform the basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

5. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2014, through the date of this

decision (20 CFR 404.1520(c) and 416.920(c)).

[Tr. 26–32].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.     DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff challenges the ALJ's Step Two finding that her medically determinable impairments, or a combination of these impairments, did not constitute a severe impairment or combination of impairments. [Doc. 18 at 6]. First, Plaintiff alleges that the ALJ failed to properly assess her fibromyalgia pursuant to Social Security Ruling 12-2p [*Id.* at 7–9]. Next, Plaintiff claims that the ALJ did not properly analyze her obesity or perform an individualized assessment of the impact of her weight on her ability to work under Social Ruling 02-1p. [*Id.* at 9–11]. Lastly, Plaintiff asserts that in determining that she did not have a severe impairment, the ALJ failed to properly weigh the medical opinions of consultative examiners Jeffrey Summers, M.D. and Kathryn Smith Ph.D. [*Id.* at 11–13].

Under the applicable regulations discussing disability, 42 U.S.C. § 423(d)(2)(A) and (B) provide:

> (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such works exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work . . .

(B) In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairments could be the basis of eligibility under this section, the Commissioner . . . shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity . . . .

42 U.S.C. § 423(d)(2)(A)-(B).

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). Plaintiff bears the burden at step two of proving the existence of a severe, medically determinable impairment. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a *de minimis* hurdle," in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90). Importantly, the diagnosis of an impairment "says nothing about the severity of the condition." *Id.* at 863. Rather, the claimant must "produce or point to *some* evidence that indicates that an alleged impairment impacts his ability to perform basic work activities." *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30, 2010), *report and recommendation adopted by*, 2010 WL 2836137 (E.D. Tenn. July 15, 2010).

If an individual's impairment or combination of impairments does not significantly limit the physical or mental ability to perform basic work activities, a severe impairment will not be

found, and the claimant is not disabled. 20 C.F.R. § 404.1520(c). Severity of impairments and

the relation to basic work activities are discussed in 20 C.F.R. § 404.1521:

> When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521.

Further, Social Security Ruling 85-2 has been issued to guide decisions as to the severity

of medical impairments, and provides in pertinent part:

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made.
>
> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.
>
> If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA.

SSR 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985). The Court will address Plaintiff's specific

allegations of error in turn.

## A.    Fibromyalgia

Plaintiff claims that the ALJ failed to properly assess her fibromyalgia when the ALJ found that it did not constitute a severe impairment.  [Doc. 18 at 8–9].  Plaintiff alleges that the ALJ, "in reviewing . . . Plaintiff's medical records seems to latch on to a single reference . . . from March of 2015 where Plaintiff reported to Dr. Dew that she was able to clean her entire house after completing a steroid pack."  [*Id.* at 8].  Additionally, Plaintiff asserts that the ALJ failed to properly analyze her fibromyalgia under Social Security Ruling 12-2p, section II.B.  [*Id.* at 9].

The Commissioner maintains that the ALJ properly found that Plaintiff's fibromyalgia was not a severe impairment, as well as conducted "the exact analysis contemplated" by Section II.B of Social Security Ruling 12-2p.  [Doc. 20 at 15].  Further, the Commissioner states that the ALJ reasonably found that Plaintiff's "subjective complaints were undermined by their inconsistencies" with the medical record.  [*Id.* at 16].

The Sixth Circuit has recognized that fibromyalgia may be a "severe impairment."  *See, e.g.*, *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1998).  Social Security Ruling 12-2p "provides guidance on how [the Social Security Administration] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [to] evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act."  SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).  The applicable ruling defines fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  *Id.*  Social Security Ruling 12-2p does not establish new law, but "merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia."  *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 399 (6th

Cir. 2016). "Under SSR 12-2P, the ALJ cannot rely on a physician's diagnosis alone; rather, the evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Herzog v. Comm'r of Soc. Sec.*, No. 2:16-CV-244, 2017 WL 4296310, at *2 (S.D. Ohio Sept. 28, 2017).

Sections I and II detail the process of evaluating fibromyalgia, with Section I stating that fibromyalgia can be established by providing evidence from an acceptable medical source, i.e. a licensed physician. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). The medical evidence must document more than a diagnosis–"[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam." Moreover, the treatment notes should be consistent with the diagnosis, reflect the status of symptoms, and establish the physician's assessment over time of strength and functional abilities. *Id.*

Next, Section II addresses the evaluation process for determining whether fibromyalgia constitutes a medically determinable impairment. *Id.* A medically determinable impairment of fibromyalgia exists "if the physician diagnosed [fibromyalgia] and provides the evidence described in section II.A or section II.B, and the physician's diagnosis is not inconsistent with the other evidence in the person's case record." *Id.*

Ultimately, the ALJ must apply one of two sets of criteria for finding that fibromyalgia is a medically determinable impairment: (1) the 1990 American College of Rheumatology ("ACR") Criteria for Classification of Fibromyalgia (SSR 12-2, § II.A); or (2) the 2010 ACR Preliminary Diagnostic Criteria (*Id.* at § II.B). *Id.* The first set of criteria, under Section II.A, requires that the claimant demonstrate: "(1) a history of widespread pain in all quadrants of the body for at least three months; (2) at least eleven positive tender points found bilaterally on the left and right sides of the body [and both above and below the waist] on physical examination; and (3) evidence that

other disorders that could cause the symptoms were excluded." *Id.* at *2–3. Under the 2010 criteria, detailed in Section II.B, the claimant must demonstrate: "(1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms or signs, such as fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause the symptoms were excluded." *Id.* at *3.

In the disability decision, the ALJ detailed Plaintiff's testimony that she was unable to work full-time due to pain in her legs, which worsened with walking and standing, as well as that she rated the pain as an eight on a one-to-ten scale. [Tr. 27–28]. However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." [Tr. 28].

The ALJ then specifically reviewed the medical record with respect to Plaintiff's "alleged fibromyalgia." [*Id.*]. Although the medical record in the present case is sparse, Plaintiff first began treatment with Mountain Hope Good Shepherd Clinic in March of 2012. [Tr. 310]. A February 4, 2015 treatment note states that Plaintiff has constant pain in her legs and body, and fibromyalgia pain for two years. [Tr. 308]. However, treatment notes from the same office visit detail "no point tenderness" or electric shock feelings. [*Id.*]. Additionally, an October 15, 2014 note reflects that Plaintiff could not sleep because of pain. [Tr. 309]. The record also shows that on February 11, 2015, Plaintiff was barely able to move "because of generalize muscle, not joint aches." [Tr. 308]. While the record reflects Plaintiff's need for a rheumatologist, Plaintiff stated that she was unable to afford the referral. [*Id.*].

Neuropathy was indicated as a diagnosis for Plaintiff's pain in her legs and feet, and she was prescribed Gabapentin and Celexa. [Tr. 309]. Plaintiff was also prescribed Prednisone, and the February 11, 2015 treatment note states that after the steroid treatment, she "felt like normal in 2 days" and "cleaned [her] entire house." [Tr. 308]. A follow-up review on March 16, 2015 notes that Plaintiff's symptoms were "totally gone" on the larger dose of Prednisone. [Tr. 307]. Additionally, Plaintiff's erythrocyte sedimentation rate ("ESR") and creatine phosphokinase ("CPR") were within normal limits. [*Id.*].

Plaintiff was then consultatively examined by Dr. Summers on April 29, 2015. [Tr. 313]. Dr. Summers noted that Plaintiff was believed to be a reliable historian, and that she reported pain all over her body, as well as diffuse joint stiffness, muscle soreness, and chronic fatigue. [*Id.*]. Further, Dr. Summers noted that Plaintiff had been diagnosed with "inclusion body myositis and fibromyalgia." [*Id.*].

On examination, Dr. Summers noted that Plaintiff's flexion at the waist was to 70 degrees, extension at the waist to 15 degrees, and lateral flexion at the waist to 20 degrees left and right. [Tr. 314]. Plaintiff's straight leg raise testing was negative in the seated and supine positions, and her range of motion was full in all other joint areas. [Tr. 314–15]. Additionally, Dr. Summers found ten tender point areas of mild severity overlying the cervical spine, trapezius muscle, lower back, both hips, and both knees. [Tr. 315]. Dr. Summers assessed osteoarthritis and fibromyalgia. [*Id.*].

In reviewing his findings, Dr. Summers noted that Plaintiff had a decrease in range of motion at her cervical and lumbar spine areas, with ten tender point areas of mild severity suggestive of fibromyalgia. [*Id.*]. Therefore, Dr. Summers opined that it was reasonable to expect Plaintiff to have difficulty twisting/turning her head, elevating her arms above shoulder level,

reaching/pushing/pulling, as well as bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than twenty pounds. [*Id.*]. Dr. Summers also opined that Plaintiff would have difficulty performing strenuous exertion due to her underlying fibromyalgia, but that she appeared capable of sedentary and low-to-moderate intensive level activities. [*Id.*].

The ALJ reviewed the pertinent medical evidence related to Plaintiff's fibromyalgia in the disability decision, and ultimately found that Plaintiff's "alleged fibromyalgia is not a severe impairment under SSR 12-2p." [Tr. 29]. First, the ALJ discussed Plaintiff's records from the Mountain Hope Clinic, including Plaintiff's potential neuropathy diagnosis and reports of constant pain in her legs and body due to fibromyalgia. [Tr. 28]. The ALJ noted that although Plaintiff stated that her body was in constant pain, she had no crepitus and reported that she could perform her activities of daily living. [*Id.*]. Additionally, the ALJ noted that "[i]n February 2015, an examination revealed hyper deep tendon reflexes but neurological examination was within normal limits," and Plaintiff "had no point tenderness or complaints of 'electric shock' feelings." [*Id.*]. Next, the ALJ discussed Plaintiff's use of Prednisone, that she reported that she was able to clean her entire house and was advised to continue Prednisone with Naprosyn, and that her reported symptoms were "totally gone" on a follow-up visit. [*Id.*]. Lastly, the ALJ stated that Plaintiff's ESR and CPK were normal. [*Id.*].

The ALJ then assigned little weight to Dr. Summers' opinion, noting that although he reported only mild examination findings, Dr. Summers opined that Plaintiff was limited to lifting twenty pounds with difficulty performing postural activities and strenuous exertion. [*Id.*]. Therefore, the ALJ stated that Dr. Summers' assessment was not consistent with his examination findings, as "his findings upon examination were mostly mild; yet, he limited [Plaintiff] to a range of light work." [*Id.*]. The ALJ also found that Dr. Summers' opinion regarding Plaintiff's ability

to perform sedentary level work, as well as specific jobs that she could perform, was outside of his area of expertise. [*Id.*].

In the present case, the Commissioner correctly states that while the ALJ found that Plaintiff's fibromyalgia was a medically determinable impairment, she concluded that it did not qualify as a severe impairment. Additionally, the ALJ reviewed that Dr. Summers documented only ten tender points of mild severity, thus examining Plaintiff's fibromyalgia under Section II.A of Social Security Ruling 12-2p, as well as noted that "the record does not document a history of widespread pain; repeated manifestations of six or more fibromyalgia signs or symptoms, or co-occurring conditions . . . and evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded," thereby examining Plaintiff's fibromyalgia under Section II.B. [Tr. 29].

Social Security Ruling 12-2p states that "[a]s with any claim for disability benefits, before we find that a person with an MDI of [fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional ability that it precludes him or her from performing any substantial gainful activity," i.e., whether the claimant's fibromyalgia constitutes a severe impairment. *See* SSR 12-2p, 2012 WL 3104869, at *2. In explaining how fibromyalgia is considered in the sequential evaluation process, the Ruling explains that "[a]t step 2, we consider whether the person has a 'severe' MDI(s) . . . If the person's pain or other symptoms cause a limitation or restriction that has more than a minimal effect on the ability to perform basic work activities, we will find that the person has a severe impairment(s)." *Id.* at *5. Therefore, the issue before the Court is whether the ALJ erred by finding that Plaintiff's fibromyalgia was not a severe impairment—not whether she properly analyzed Plaintiff's fibromyalgia under Social Security Ruling 12-2p.

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment, but unlike other medical conditions that can be confirmed by objective testing, patients with fibromyalgia present no "objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citing *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1998)). "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id.* at 244.

Plaintiff asserts that the medical records reflect "generalized muscle pain," as well as "constant pain in [her] legs and body" for over two years, and thus, the ALJ improperly found that her fibromyalgia was not a severe impairment. [Doc. 18 at 9]. However, the record reflects that the ALJ discussed the applicable diagnosis standard for fibromyalgia, and determined that the findings required under SSR 12-2p to establish her fibromyalgia as a severe impairment were not present. [Tr. 29]. The ALJ's determination is supported by sufficient evidence. Notably, Plaintiff has not pointed to anything in the record establishing that she met Section II.A of Social Security Ruling 12-2p. With regard to the requisite tender points both bilaterally and above and below the waist, her examination with Dr. Summers only revealed ten tender point areas of mild severity. Further, although Plaintiff points to evidence in the medical record which she claims establishes a history of widespread pain, she fails to provide evidence which details repeated manifestations of six or more symptoms or reoccurring problems, as well as evidence that other disorders that could cause the repeated symptoms, signs, or co-occurring conditions were excluded—both conditions under Section II.B of Social Security Ruling 12-2p. *See Truran v. Comm'r of Soc. Sec.*, No. 16-10862, 2017 WL 3613970, at *1 (E.D. Mich. Aug. 23, 2017) ("Rather, the ALJ considered the 'possible fibromyalgia' diagnosis to be a medically determinable but non-severe impairment. The

Court further agrees with the Magistrate Judge that, even if the alternative criteria for diagnosing fibromyalgia under Social Security Ruling 12-2p applied to determine whether Truran's 'possible fibromyalgia' diagnosis was a severe impairment at Step 2, Truran has not come forward with evidence of the third criterion—that other disorders that could cause pain, numbness, and fatigue . . . were excluded."); *Reavis v. Colvin*, No. 6:16-CV-02-HAI, 2016 WL 6600496, at *5 (E.D. Ky. Nov. 7, 2016) ("[T]he ALJ accepted the Plaintiff's treating physician's notes and diagnosis, but failed to find that the symptoms of her impairment severely impacted her ability to work . . . The ALJ determined that the findings required under SSR 12-2p to establish fibromyalgia were not present. The determination that Plaintiff does not suffer from fibromyalgia as a severe impairment is supported by sufficient evidence." ).

In the context of the fibromyalgia assessment, Plaintiff also claims that the ALJ improperly focused on the progress note that she was able to clean her entire house after the Prednisone treatment. [Doc. 18 at 8]. Plaintiff contrasts this statement with her testimony at the disability hearing that her daughter then had to take over most of the household chores. [*Id.*]; *see* [Tr. 56]. Plaintiff goes no further to develop this argument, so it is unclear how Plaintiff's claim specifically challenges the ALJ's determination.

Notwithstanding the imprecise nature of Plaintiff's argument, this Court's review of the evidence of record demonstrates the ALJ's decision is supported by substantial evidence. While Plaintiff claims that the ALJ improperly relied upon her ability to clean her entire house, the ALJ cited this portion of the medical record to demonstrate that Plaintiff's condition improved with treatment. This, along with other appropriate reasons throughout the disability decision, was provided by the ALJ to support the finding that Plaintiff's fibromyalgia was not a severe impairment. *See, e.g.*, *Jordon v. Berryhill*, No. 2:16-CV-00322, 2017 WL 6816694, at *10 (E.D.

Tenn. Nov. 30, 2017) ("While the ALJ's explanation of his final determination that Jordan does not have the medically determinable impairment of fibromyalgia is terse, it is apparent from the Decision that the ALJ made a thorough review of the history and information on this topic in reaching his conclusion . . . The determination, despite its brevity, is supported by substantial evidence."), *report and recommendation adopted sub nom.*, *Jordon v. Comm'r of Soc. Sec.*, 2018 WL 328207 (E.D. Tenn. Jan. 5, 2018). First, as the Court has already detailed, the ALJ determined that Plaintiff failed to establish the requisite findings under Social Security Ruling 12-2p. Next, when reviewing the medical record, the ALJ stated how after Plaintiff was prescribed a Prednisone dose pack, she reported being able to clean her entire house, and on a follow-up appointment, her reported symptoms were "totally gone." [Tr. 28].

The ALJ noted that Plaintiff had no point tenderness or complaints of electric shock, and a normal ESR and CPK. [*Id.*]. Lastly, the ALJ also found that Plaintiff did not have a combination of disabling symptoms or limitations because she had not generally received the type of medical treatment consistent with a disabling condition. *See Flatt v. Berryhill*, No. 2:16-CV-00018, 2017 WL 2190651, at *6 (M.D. Tenn. Apr. 13, 2017) ("In assessing the degree of limitation resulting from Plaintiff's fibromyalgia, however, the ALJ found that the evidence supported only mild limitations, and supported his finding with reference to the evidence of record."), *report and recommendation adopted by*, 2017 WL 2131860 (M.D. Tenn. May 16, 2017).

The ALJ also found that Dr. Summers' opinion was entitled to little weight, as "his assessment is not consistent with his findings on examination." [Tr. 28]. Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on

the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). In fact, opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Here, the ALJ's assignment of little weight to Dr. Summers' opinion is supported by substantial evidence, as the ALJ properly considered the supportability of the opinion with the examination findings. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 469 (6th Cir. 2012) (holding a consultative examiner's opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record"); *see also* 20 C.F.R. § 404.1527(c) (directing that an ALJ evaluates a non-treating source opinion by considering the supportability of the opinion). The ALJ found that Dr. Summers' mild examination findings did not support the restrictive opined limitations. *See, e.g.*, *Hinkle v. Berryhill*, No. 2:17-CV-54, 2018 WL 2437238, at *5 (E.D. Tenn. May 30, 2018) (holding the ALJ properly assigned little weight to a consultative examiner's opinion, as the ALJ detailed how the opinion was not consistent with the examination or medical record); *Maples v. Colvin*, No. 3:15-CV-521-PLR-HBG, 2016 WL 7669502, at *8 (E.D. Tenn. Nov. 23, 2016) (upholding the decision of an ALJ to discount the opinion of a consultative examiner in part due to finding the opinion inconsistent with

"mild examination findings"), *report and recommendation adopted by*, 2017 WL 87036 (E.D. Tenn. Jan. 10, 2017).

Plaintiff claims that Dr. Summers' opinion was supported by his examination findings, as although Dr. Summers did refer to many of Plaintiff's limitations as mild, he also found that she would have difficulty twisting and turning her head, elevating her arms above shoulder level, bending, stooping, kneeling, squatting, crouching, as well as performing strenuous exertion due to her underlying fibromyalgia. [Doc. 18 at 12]; *see* [Tr. 315]. However, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). The Court finds that the ALJ's decision that Dr. Summers' opinion was not consistent with his mild examination findings is within the ALJ's "zone of choice." *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (noting the substantial evidence standard allows considerable latitude to ALJ's because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference") (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

Therefore, the Court finds that the ALJ's assignment of little weight to Dr. Summers' opinion is supported by substantial evidence, and that the ALJ appropriately discounted the opinion in finding that Plaintiff's fibromyalgia was not a severe impairment. Accordingly, the Court also finds that the ALJ properly determined that the medical record did not support a finding that Plaintiff's fibromyalgia was a severe impairment.

### B.     Obesity

Plaintiff claims that the ALJ erred by failing to find that her obesity was a severe impairment, and the ALJ did not perform "an individualized assessment of the impact of [ ] Plaintiff's weight on her ability to do work." [Doc. 18 at 10].

Social Security Ruling 02-1P instructs adjudicators to consider the effects obesity may have on a disability claimant throughout the sequential evaluation. 2002 WL 34686281, at *4–7 (Sept. 12, 2002). At step two, obesity will be considered "a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *4. SSR 02-1P classifies individuals with regard to obesity by considering their Body Mass Index ("BMI"). *Id.* at *2. Individuals with a BMI greater than or equal to 30 are considered "obese," with those above a BMI of 40 having the most "extreme" type of obesity with the greatest risk for developing obesity-related impairments. *Id.* Nevertheless, "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment." *Id.* at *4. An ALJ is tasked with conducting "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.*

In the disability decision, the ALJ noted that at her April 29, 2015 examination with Dr. Summers, Plaintiff was 5' 6.5" tall and weighed 232 pounds. [Tr. 29]; *see* [Tr. 314]. The ALJ addressed that although Plaintiff alleged weight gain from her medications, the medical record detailed that she weighed 232 pounds on February 4, 2015, when Prednisone was first prescribed, and she testified during the disability hearing that her weight was between 220 and 230 pounds. [Tr. 29]; *see* [Tr. 50, 307]. Therefore, the ALJ found that although her BMI was measured at 36.9, "there is no evidence showing [Plaintiff's] obesity was ever treated or significantly contributed to

any of her deficits." [Tr. 29]. Lastly, the ALJ stated that "there is no indication that [Plaintiff's] obesity significantly interferes with her ability to work," and thus found that her obesity was not a severe impairment. [*Id.*].

Plaintiff claims that during the disability hearing, the ALJ failed to perform an individualized assessment of the impact of her obesity, as she only asked Plaintiff "And what is your weight?" to which she responded "220, 230, somewhere around in there." [Doc. 18 at 10]; *see* [Tr. 50]. Plaintiff asserts that the ALJ's single question regarding her weight during the disability hearing does not qualify as an individualized assessment; however, Plaintiff fails to supplement this argument with any corresponding caselaw or support in the applicable regulations. While Social Security Ruling 02-1p requires an ALJ to take into consideration the effects obesity may have on a disability claimant, "[i]t is a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). Rather, "Social Security Ruling 02-1p does not mandate a particular mode of analysis." *Id.* at 411. SSR 02-1P "does nothing to relieve [a claimant] of the burden of marshaling competent medical opinion[s] and evidence to show *specifically* how her obesity exacerbated her other impairments, or interacted with them, to render her incapable of all suitable work." *Smith v. Astrue*, 639 F. Supp. 2d 836, 846 (W.D. Mich. 2009) (emphasis in original).

Here, the ALJ cited Social Security Ruling 02-1p, and found that the medical record established that Plaintiff's obesity was never treated, contributed significantly to any of her deficits, or significantly interfered with her ability to work. Plaintiff argues that Dr. Smith noted that Plaintiff's obesity was due to her Prednisone intake. [Doc. 18 at 10]; *see* [Tr. 320]. However, the ALJ specifically evaluated Plaintiff's weight from before and after her Prednisone prescription.

Ultimately, the Court finds that the ALJ appropriately "explain[ed] how [she] reached [her] conclusion on whether obesity caused any physical or mental limitations," as explained in Social Security Ruling 02-1p.  2002 WL 34686281, at *4–7 (Sept. 12, 2002).  The ALJ was not required to extensively question Plaintiff during the hearing regarding the effects of her obesity, and conducted an individualized assessment of the impact of her obesity on the ability to perform work in the disability decision.  *Cf. Rummerfield v. Colvin*, No. 4:13-CV-04012-SLD, 2014 WL 4815991, at *6 (C.D. Ill. Sept. 29, 2014) ("The ALJ apparently agreed that Rummerfield suffers from obesity, but her analysis on point offers only the cryptic fragment: 'Obesity . . . 61 inches 222 pounds (Exhibit 31F) 249 pounds (Exhibit 20F)'" . . . This bare notation provides the reviewing Court with no insight into the ALJ's reasoning regarding Rummerfield's obesity . . . and does not establish that the ALJ performed the requisite 'individualized assessment' of the impact of Rummerfield's obesity on the severity of her impairments.").  Accordingly, the ALJ's finding that Plaintiff's obesity was not a severe impairment is supported by substantial evidence.

### C.    Opinion of Kathryn Smith Ph.D.

Plaintiff challenges the ALJ's assignment of little weight to the extent that Dr. Smith determined that Plaintiff had more than mild limitations in her opinion.  [Doc. 18 at 13].  Plaintiff asserts that the ALJ "selectively" applied Dr. Smith's "findings in order to minimize Dr. Smith's description of Plaintiff's issues with depression and how it affects her ability to carry out basic work-related activities."  [*Id.*].

Dr. Smith consultatively examined Plaintiff on May 14, 2015.  [Tr. 318].  Dr. Smith performed a clinical interview of Plaintiff, and noted that Plaintiff "has depression secondary to her physical condition and all the changes in her life because of her health."  [Tr. 319].  Additionally, Dr. Smith noted that Plaintiff did not have insurance to obtain therapy, and was

taking Celexa.  [*Id.*].  Dr. Smith performed a mental statutes exam, and stated that Plaintiff "has chronic depressed mood," as well as was "dealing with grief, loss, and chronic pain."  [Tr. 320].  Dr. Smith concluded that Plaintiff had depressive disorder secondary to her general medical condition, as well as somatic symptom disorder with predominant pain, persistent.  [Tr. 321].

Accordingly, Dr. Smith opined that Plaintiff's ability to understand, remember, and carry out simple instructions, as well as her ability to make simple judgments, was not limited.  [*Id.*].  However, she also found that Plaintiff's ability for complex instructions and ability to make complex judgment were limited.  [*Id.*].  Lastly, Dr. Smith opined that Plaintiff's ability to sustain concentration and persist, ability to interact appropriately with others, and ability to adapt to changes and requirements were mildly to moderately limited.  [*Id.*].

The ALJ reviewed Dr. Smith's opinion, and found that "[t]o the extent Dr. Smith determined [Plaintiff] has more than mild limitations, little weight is given to the opinion, as the record in the entirety, including the findings of Dr. Smith upon examination, support no more than mild limitation.  [Tr. 30].

In the disability decision, the ALJ detailed the medical record with respect to Plaintiff's depression, including Dr. Smith's opinion.  [Tr. 29].  First, the ALJ stated that Plaintiff was diagnosed with depressive disorder and somatoform disorder during her consultative examination, and she was prescribed Celexa.  [*Id.*].  However, the ALJ clarified that no specific mental diagnosis was given during Plaintiff's treatment at Mountain Hope Good Shepherd Clinic.  [*Id.*].  Additionally, the ALJ discussed Dr. Smith's opinion where Plaintiff had average motor activity, good eye contact, was oriented in four spheres, and her speech was normal.  [*Id.*].  The ALJ discussed how Plaintiff's mood was intact, her thoughts were organized and logical, and her insight and judgment were good.  [*Id.*].

Next, the ALJ discussed that although Dr. Smith opined that Plaintiff's ability to sustain, concentrate, persist, and adapt to changes was mildly to moderately limited, Plaintiff was able to do serial subtractions, spell "world" backwards, her recall was normal, her abstract thinking was intact, and her fund of information was good with her intelligence thought to be average or above. [*Id.*]. Similarly, the ALJ noted that while Dr. Smith opined that Plaintiff had mild to moderate limitation in interacting appropriately, both Dr. Smith and Dr. Summers opined that Plaintiff was cooperative, with Dr. Smith stating that Plaintiff was very pleasant and had excellent social skills. [Tr. 29–30].

Plaintiff claims that the ALJ selectively applied findings in Dr. Smith's opinion "in order to minimize Dr. Smith's description of Plaintiff's issues with depression and how it affects her ability to carry out basic work-related activities." [Doc. 18 at 13]. While the ALJ specifically noted Dr. Smith's diagnosis of depressive disorder and somatoform disorder, the ALJ appropriately found that the medical record, as well as Dr. Smith's examination findings, did not support more than mild limitations due to Plaintiff's depression. Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009).

The ALJ properly considered the consistency and supportability of Dr. Smith's opinion with both the objective medical record and her own examination findings. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (addressing the opinion of an examining consultant, and noting the ALJ may consider "specialization, consistency, [ ] supportability, . . . [and] [o]ther factors 'which tend to support or contradict the opinion'") (internal citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2)–(6). The ALJ specifically detailed how the objective record

and the examination findings did not support more than mild limitations due to Plaintiff's depression. For example, the ALJ noted that Dr. Smith's opinion that Plaintiff's ability to sustain concentration, persist, and adapt to changes was mildly to moderately limited was in contrast to the results of Plaintiff's mental status examination, with her intelligence thought to be average or above. Similarly, the ALJ noted that although Dr. Smith opined that Plaintiff had mild to moderate limitations in interacting appropriately, she was cooperative during both consultative examinations, and Dr. Smith stated that Plaintiff had excellent social skills. Lastly, the ALJ contrasted Dr. Smith's finding of depressive thinking and depressed affect with the examination findings that Plaintiff's mood was intact, her thoughts organized and logical, and her insight and judgment were good.

Accordingly, the Court finds that the ALJ's reasons for discounting Dr. Smith's opinion are consistent with the regulatory factors for weighing medical opinions and controlling Sixth Circuit authority. The ALJ found that Dr. Smith's opinion was not supported by the medical record or her examination findings, and specifically noted these inconsistencies. Additionally, the Court has already found that the ALJ's assignment of little weight to Dr. Summers' opinion was supported by substantial evidence. Therefore, the Court finds that the ALJ appropriately weighed the medical opinions in the present case, and Plaintiff's allegations of error do not constitute a basis for remand.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be

**DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED**.

The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED**

to close this case.

ORDER ACCORDINGLY.


*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge